# EXHIBIT A

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE ~~~~~ OF MIDDLESEX

MAY 1 3 2014

CLERK

14-4661

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

MIDDLESEX, ss.



MIDDLESEX SUPERIOR COURT
CIVIL ACTION NO.

FARROKH SEIFAEE, PERSONALLY and )
ON BEHALF OF ALL OTHERS )
SIMILARLY SITUATED, )
 )
              Plaintiff )
 )
v. )
 )
AREVA NP INC. d/b/a AREVA INC., )
 )
              Defendant )
 )

## VERIFIED COMPLAINT
## AND DEMAND FOR TRIAL BY JURY

### I.   INTRODUCTION

This action arises from the lengthy employment of the Plaintiff, Farrokh Seifaee, by the Defendant, AREVA NP Inc. d/b/a AREVA Inc. and its predecessors, and Defendant's termination of Plaintiff's employment on or about October 15, 2013.  Plaintiff, a 61-year-old engineer with a doctorate and two Master's degrees, worked for Defendant and its predecessors for almost 25 years, receiving outstanding reviews and recognition throughout.  A "Reduction in Force" implemented by the Defendant in the fall of 2013 resulted in the termination of the Plaintiff and 12 other employees, all of whom were over the age of 55, and 11 of whom, the Plaintiff included, were over the age of 60. Plaintiff maintains that Defendant's actions constituted age discrimination.

1

Plaintiff seeks damages on behalf of himself and all others similarly situated for discrimination based on age in violation of M.G.L. c.151B, and/or other applicable employment-related laws and/or regulations, under theories of both disparate treatment and disparate impact.

## II.   THE PARTIES

1.     The Complainant, Farrokh Seifaee ("Dr. Seifaee"), is an individual residing in Acton, Massachusetts.

2.     The Respondent, AREVA NP Inc. d/b/a AREVA Inc. ("AREVA"), is a Delaware corporation with a principal place of business at 3315 Old Forest Road, OF33, P.O. Box 10935 Lynchburg, VA 24501. AREVA operates a principal place of business in Marlborough, Massachusetts, where Dr. Seifaee worked while employed by the company.

## III.   THE FACTS

3.     Dr. Seifaee's date of birth is July 30, 1952.  At the time of his termination, Dr. Seifaee was 61 years old.

4.     Dr. Seifaee earned his PhD. at the University of Massachusetts in 1986; he earned two Master's Degrees at MIT in mechanical and nuclear engineering in 1979.

5.     AREVA is a multinational energy company (with $10 billion market capitalization and annual sales of about $12 billion) with branches throughout the world in the energy field. It provides engineering services to nuclear plants, owns uranium mines, manufactures fuel for nuclear power plants, designs and manufactures nuclear power plant components, and designs fuel storage for spent nuclear fuel. In addition, AREVA designs and builds solar and wind power technologies.

2

6.      AREVA's United States operation (with multiple offices throughout the country and with approximately a 5,000 person work force) designs and provides nuclear fuel and engineering services to nuclear power plants in the United States and throughout the world.

7.      AREVA employs in excess of six (6) people in Massachusetts and is otherwise an employer subject to M.G.L. c. 151B and/or Title VII of the 1964 Civil Rights Act, as amended, and/or other applicable employment-related laws and/or regulations.

8.      On or about April 10, 1989, Dr. Seifaee started working for Yankee Atomic as a senior engineer.  Yankee Atomic was acquired by Duke Engineering Services ("DE&S") in 1997.  Subsequently in 2001, DE&S was acquired by a French company (Framatome) which later changed its name to AREVA in 2002.  Therefore, Dr. Seifaee has worked for AREVA (or ones of its predecessors) for nearly twenty five years.

9.      Throughout his entire career with AREVA, Dr. Seifaee was a high performing, exemplary employee who regularly received recognition and superlatives relating to his work for the company, which included work in many different areas of expertise.

10.     From 1997-2007, Dr. Seifaee worked as Senior Engineer in the Safety Analysis unit for AREVA on several nuclear power plants, which included work on loss of coolant accident analyses, and auditing the work that General Electric performed for Vermont Yankee and Carolina Power & Light Company.

11.     In 2000, Dr. Seifaee was sent by the company on assignment to South Korea to assist with an audit for a United States government sponsored (Department of Energy) project that the company was performing as part of a nuclear policy agreement between the two countries.

3

12.     In 2001 Dr. Seifaee was sent by the company on an assignment to assist BSC (Bechtel SAIC Company) on the Yucca Mountain Project after which he received a '*Certificate of Excellence*" from BSC for exceptional performance in completing the software qualification project.

13.     In 2006 AREVA started a major project to obtain design certification from the Nuclear Regulatory Commission for its EPR Third Generation nuclear power plant design.

14.     Between 2007 and 2009, Dr. Seifaee was assigned to AREVA's Safety Analysis Group to perform safety analysis for the United States' EPR.  In addition, due to his broad and diverse technical background, and expertise in various engineering computer codes, Dr. Seifaee was assigned to a variety of tasks in different groups at AREVA, supporting several projects including tasks in Risk Informed Engineering Probabilistic and Risk Assessment ("PRA"), and Severe Accidents Analysis ("SA") groups. These two groups (PRA and SA) were linked together and worked very closely on various projects.

15.     In 2009 Dr. Seifaee was promoted to Advisory Engineer by AREVA, which is one of the highest ranking technical positions at the company.

16.     Between 2009 and 2012, although he was technically working in the Safety Analysis group, Dr. Seifaee simultaneously supported the Safety Analysis group and the PRA and SA groups.

17.     In 2012, Dr. Seifaee transferred from the Safety Analysis to the Risk Informed Engineering Probabilistic and Risk Assessment and Severe Accident group within the company at the same Advisory Engineer position.

4

18. Dr. Seifaee decided to transfer to the PRA group because it was represented to him that the PRA and SA groups solidified his position within the company, as it had more projects available in the pipeline and was therefore more stable than the Safety Analysis group.

19. In 2012 Dr. Seifaee received the *"Corporate Organizations Recognizing Excellence"* award from AREVA for his 2011 work on Severe Accidents Analysis.

20. On or about July-August 2013, several engineering projects at AREVA were cancelled and the company was attempting to find new projects to maintain its work force.

21. AREVA management instructed all employees to use any remaining vacation time for the rest of 2013 until new engineering projects were secured; and after that go on Vacation Time without Pay ("VTOP") until new projects were secured.

22. Representations were made to employees by management at that time that new projects should be initiated in January 2014.

23. At the company's insistence, Dr. Seifaee used 160 hours of his vacation hours while periodically going to work performing technical work, and charging the work to vacation time.

24. During the time that Dr. Seifaee was required to use his vacation time in lieu of performing technical work, AREVA funneled most of its technical work to its younger engineers, in its Marlborough and Lynchburg, Virginia offices.

25. Indeed, while Dr. Seifaee was being forced to use his vacation he noticed that any projects that were secured for the PRA/SA group were assigned to the younger, less skilled employees of the group, despite the projects being complex enough for more experienced, skilled engineers.

26.     The expertise and experience of these younger employees assigned on those tasks was substantially less than Dr. Seifaee's.

27.     By the end of September 2013, when Dr. Seifaee asked PRA/SA Manager Mark Rutherford ("Manager") why he was not assigned on those tasks, he was told that the group was expecting to get more projects later and Dr. Seifaee would be considered for the new projects.

28.     At the same time Dr. Seifaee was instructed by his Manager to continue taking his vacation time, he also noticed that he was no longer invited to any new trainings required for new projects.

29.     On October 15, 2013, Dr. Seifaee was informed that AREVA's engineers would be subject to a reduction in force ("RIF").

30.     On October 15, 2013, Dr. Seifaee was informed that he was one of thirteen (13) engineers that were selected for termination as part of the RIF out of a total number of 122 potential people to be selected for termination.

31.     All of the AREVA employees selected for termination in the RIF were over the age of fifty five (55).

32.     Twelve (12) of the thirteen (13) AREVA employees selected for termination in the RIF were over the age of sixty (60), like Dr. Seifaee.

33.     Of the forty four (44) AREVA employees under the age of forty (40) who were eligible for termination pursuant to the RIF, none was selected for termination.

34.     Additional AREVA Reduction(s) in Force occurred at or around the same time as the one in which Dr. Seifaee was terminated.

6

35.     AREVA's other Reduction(s) in Force involved approximately eighty (80) employees, of which approximately 70% of those selected for termination were over the age of sixty (60).

36.     The AREVA employees chosen to be terminated in the RIF were ranked as part of identifying those to be terminated and those to be retained.

37.     The ranking was based on a score that combined prior "PDA Rating" for 2011 and 2012, "Performance", and "Unique Skills Rating."

38.     The "Total Score" was based on the sum of performance and unique skills. This Total Score was then transformed into a ranking that considered "Benefit Seniority Years."

39.     The fourteen (14) AREVA employees with the lowest ranking were then selected for termination.

40.     Based on the above numbers, it is clear that RIF decisions,, and the ranking policy made by AREVA, had a substantial disparate impact on workers over the age of fifty five (55) years old.

41.     Dr. Seifaee brought a Charge of Discrimination at the Massachusetts Commission Against Discrimination ("MCAD"), voluntarily withdrew the same and was notified of his right to bring a private suit by letter from the MCAD dated April 28, 2014.

IV.     COUNTS

## COUNT I
### AGE DISCRIMINATION – DISPARATE TREATMENT
### (M.G.L. c. 151B § 4(1))

42.     Plaintiff hereby restates and incorporates paragraphs 1 - 41 of this Complaint as if fully stated herein.

7

43.     By treating Dr. Seifaee differently than the younger employees in the Safety

Analysis unit of AREVA and by clearly terminating Dr. Seifaee based only on his age, the

company has treated Dr. Seifaee differently based on his age, thereby discriminating against him.

44.     By enforcing a company policy of allowing younger PRA/SA employees to

perform work, while forcing older employees, such as Dr. Seifaee, to take vacation in lieu of

performing technical work, AREVA treated Dr. Seifaee differently based on his age, thereby

discriminating against him.

45.     By including only older workers (those over the age of 55) in its RIF, AREVA

treated Dr. Seifaee differently based on his age, thereby discriminating against him.

46.     Respondent has discriminated against Dr. Seifaee, and those similarly situated,

based upon his age.  Respondent's actions have unreasonably interfered with Dr. Seifaee's

ability to perform his job and ultimately resulted in his inexcusable termination.

47.     Dr. Seifaee, and those similarly situated, have been discriminated against by the

Respondent on account of his protected status and protected activities, specifically his age.  As

such, the actions of the Respondents resulted in violations of M.G.L. c.151B and/or other

applicable employment-related laws and/or regulations, under a theory of disparate treatment.

48.     As a result of Defendant's actions, Dr. Seifaee and others similarly situated have

suffered damages.

## COUNT II
## AGE DISCRIMINATION -- DISPARATE IMPACT
### (M.G.L. c. 151B § 4(1))

49.     Plaintiff hereby restates and incorporates paragraphs 1 - 48 of this Complaint as if

fully stated herein.

50.     Br creating a ranking system whereby all AREVA employees selected for

termination in the RIF were over the age of fifty five (55), and thirteen (13) of the fourteen (14)

8

employees selected for termination were over the age of sixty (60), AREVA enforced an

employment policy that disparately impacted workers over the age of fifty five (55).

51.    In using their ranking discriminatory ranking system AREVA caused Dr. Seifaee

and thirteen (13) other employees over the age of fifty five (55) to be terminated, and lose their

jobs.

52.    Dr. Seifaee, and those similarly situated, have been discriminated against by the

Respondent on account of his protected status and protected activities, specifically his age.  As

such, the actions of the Respondents resulted in violations of M.G.L. c.151B and/or other

applicable employment-related laws and/or regulations, under a theory of disparate impact.

53.    As a result of Defendant's actions, Dr. Seifaee and others similarly situated have

suffered damages.

**COUNT III**
**UNLAWFUL INTERFERENCE – DISPARATE TREATMENT**
**(M.G.L. c. 151B § 4A)**

54.    Plaintiff hereby restates and incorporates paragraphs 1 - 53 of this Complaint as if

fully stated herein.

55.    By treating Dr. Seifaee, and those similarly situated, differently based on his age

AREVA has knowingly interfered with Dr. Seifaee's right to be free from discrimination in the

terms, conditions, and privileges of employment.

56.    Indeed, as an employee of AREVA Dr. Seifaee had the right to a fair

determination of his status within the RIF without any discriminatory animus.

57.    Further as an employee of AREVA Dr. Seifaee had the right to not be forced to

take his paid vacation time off so that younger workers at AREVA could work on projects that

Dr. Seifaee was certainly suited to handle.

9

58.     Through these acts, Dr. Seifaee's, and those similarly situated, employment rights were intentionally interfered with, and were not free from discrimination as the law requires.  As such, the actions of the Respondents resulted in violations of M.G.L. c.151B and/or other applicable employment-related laws and/or regulations, under a theory of unlawful interference as applied through disparate treatment.

59.     As a result of Defendant's actions, Dr. Seifaee and others similarly situated have suffered damages.

### COUNT IV
### UNLAWFUL INTERFERENCE – DISPARATE IMPACT
### (M.G.L. c. 151B § 4A)

60.     Plaintiff hereby restates and incorporates paragraphs 1 - 59 of this Complaint as if fully stated herein.

61.     By utilizing specific employment practices or selection criteria knowing that the practices or criteria were not reasonably related to job performance (i.e. AREVA's RIF ranking system), AREVA interfered with Dr. Seifaee's, and those similarly situated's, right to be free from discrimination in the terms, conditions, and privileges of employment.

62.     Moreover, and as made clear by the ultimate result of AREVA's RIF ranking system, AREVA knew that the practices or criteria had a significant disparate impact on a protected class or group, specifically those over the age of fifty five (55).

63.     Through these acts, Dr. Seifaee's, and those similarly situated, employment rights were interfered with, and were not free from discrimination as the law requires.  As such, the actions of the Respondents resulted in violations of M.G.L. c.151B and/or other applicable employment-related laws and/or regulations, under a theory of unlawful interference as applied through disparate impact.

64.   As a result of Defendant's actions, Dr. Seifaee and others similarly situated have suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff hereby prays that this Honorable Court award him and others similarly situated the following relief:

1. Compensatory damages;

2. Punitive Damages,

3. Prejudgment and post-judgment interest;

4. Attorney's fees;

5. Costs of this action; and

6. Such further relief as this Court deems fair and just.

**V.   JURY DEMAND**

Plaintiff demands a TRIAL BY JURY on each claim and issue so triable.

**VI.   VERIFICATION**

I, Farrokh Seifaee, being duly sworn, do depose and say that the facts alleged in the within Verified Complaint are true to the best of my knowledge, information, and belief.

Signed under the pains and penalties of perjury, this _12_ day of May 2014:

Farrokh Seifaee

11

Respectfully submitted,
Plaintiff by his attorneys,

Dated: May 12, 2014

Todd J. Bennett, BBO# 643185
tbennett@bennettandbelfort.com
Eric R. LeBlanc, BBO #666786
eleblanc@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
Tel: (617) 577-8800