UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-12621-RGS

FARROKH SEIFAEE

v.

AREVA, INC.

MEMORANDUM AND ORDER ON DEFENDANT AREVA'S MOTION FOR
SUMMARY JUDGMENT and PLAINTIFF FARROKH SEIFAEE'S CROSS
MOTION FOR PARTIAL SUMMARY JUDGMENT

November 10, 2015

STEARNS, J.

Dr. Farrokh Seifaee brought parallel federal and state causes of action against his former employer, defendant AREVA, Inc., under the Massachusetts Anti-Discrimination Law, Mass. Gen. Laws ch. 151B, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*., based on disparate treatment (Counts I, III, V, and VIII) and disparate impact (Counts II, IV, VI and VIII). Seifaee alleges that he was terminated during a workplace reduction in force (RIF) because of his age. Seifaee now seeks partial summary judgment on his disparate-impact claims, while AREVA seeks summary judgment on all counts.

BACKGROUND

Seifaee, a licensed professional engineer, had been employed by AREVA or its corporate predecessors as an at-will employee for twenty-five years as of his termination on October 15, 2013.  When discharged by AREVA, Seifaee was 61 years old.  During his career, Seifaee served AREVA in the roles of Senior Engineer, Principal Engineer, and Advisory Engineer.

While at AREVA, Seifaee worked in the Safety Analysis, Probabilistic Risk Assessment, and Severe Accidents groups.  At the time he was laid off, Seifaee was an Advisory Engineer within AREVA's "Risk Informed Engineering and Severe Accidents" department (RIESA).  Seifaee's immediate supervisor was Ogden Sawyer.  Sawyer reported to Mark Rutherford, the manager of RIESA. Rutherford, in turn reported to Bret Boman, the head of the Nuclear Analysis Department (of which RIESA was a part).

Seifaee's evaluations record a history of satisfactory job performance. Seifaee received a score of 4 out of 5 (met all expectations and exceeded some) on his Professional Development Appraisal (PDA) for 2011, and a score of 3 out of 5 (met all expectations) on his 2012 PDA.  Seifaee and his work teams won two CORE Awards (internal awards recognizing good performance) between 2012 and 2013.  Seifaee's supervisors, Sawyer and Rutherford, variously characterized his job performance as "good," and

"middle tier" but not a "rock star." Sawyer Dep. at 41; Rutherford Dep. at 111. One of Seifaee's previous supervisors, Virgilio Esquillo, had a more negative view of Seifaee's performance, complaining on one occasion that "it became obvious that [Seifaee] would not be able to complete [a project], and I took it on myself to see it done," because Seifaee "did not demonstrate the necessary intellectual horsepower to solve the problem." Def. Mem. at 3.[1]

In 2011, AREVA suffered severe business reverses, losing multiple nuclear reactor projects. 2011 was the first of four successive years of net financial losses, which precipitated multiple RIFs. By mid-2013, Seifaee's group had lost two major projects and most of its funding, and by July of 2013 had virtually nothing to do. What little work remained was seismic-related, while Seifaee's principal expertise was in thermal hydraulics. Seifaee was also omitted from multiple emails sent to other members of his group offering work on new projects. It is undisputed that the loss of business impacted all employees in Seifaee's group.

In July of 2013, facing a continuing dearth of work, AREVA began to encourage employees to take vacation time whenever possible. In May of 2013, Seifaee had scheduled a three-week vacation, which he took from

---

[1] In his deposition, Boman questioned the accuracy of Esquillo's comments about Seifaee's performance on the project in question.

August 5, 2013 to August 23, 2013.  AREVA maintains that the length of Seifaee's vacation made it difficult for supervisors to assign him billable work, despite the new vacation policy.

By September 23, 2013, AREVA had decided on another RIF.  AREVA issued criteria for department heads (including Boman) to consider in deciding who was to be laid off, including business needs, the current and past evaluations of each employee, and the employee's critical or unique skills.  Boman (and other department heads) were to rate each employee on a scale from 1 to 10, and preserve written documentation supporting their evaluation (including past and current PDAs).

Boman gave Seifaee a "performance" rating of 2.7 (out of 10) and a "unique skills" evaluation of 2.0 (also out of 10).  Boman recorded the evaluations on a "RIF Rating Form."  Boman considered only Seifaee's 2012 PDA, rather than his two most recent PDAs as AREVA's criteria had recommended.  Boman's evaluation also included the notation "[c]ame with PWR experience (Diablo Canyon)," although Seifaee in fact had done no work at Diablo Canyon.

Boman testified that he relied on contributions from section managers, including Rutherford, in making his RIF rankings, but that he made no "extra attempts" to gather information about an engineer's skills or

4

experience, nor did he "review any documentation" regarding the engineer's unique abilities. Boman Dep. at 40-42. Boman also testified that he did not speak with Sawyer, who was Seifaee's direct supervisor. According to Boman, Rutherford ranked Seifaee "in the last position that he had," although Rutherford later testified that he was not "actively involved" in evaluating Seifaee, but that he considered Seifaee to be a "middle-tier" performer. Boman also testified that when he consulted Rutherford regarding Seifaee's 2012 PDA rating, Seifaee had been working under Rutherford's direction for less than a month. Sawyer, for his part, expressed "surprise" that Seifaee was terminated, and testified that Rutherford appeared upset that Seifaee had been laid off.

Boman ultimately ranked Seifaee 130th of the 136 employees eligible for the RIF. Based on Boman's ratings, AREVA ultimately terminated 14 employees, including Seifaee. All 14 were over the age of 55, while 12 of 14 were over the age of 60. Boman explained to Sawyer that AREVA had considered the skill sets of employees across the company, had compared them to the projected business demands, and had terminated the employees whose skills were deemed redundant.

Seifaee originally filed this Complaint in the Middlesex County Superior Court on May 12, 2014.  On June 24, 2014, AREVA removed the case to this court on federal question grounds.  Discovery is now complete.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment will not be granted if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once that burden has been carried, the nonmovant must show more than a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and more than a "mere . . . scintilla" of evidence. *Anderson*, 477 U.S. at 252.

In employment discrimination cases, the First Circuit is generally of the view that the issue of an employer's intent or motive is for the jury. *See Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 30 (1st Cir. 2015);

*Mulero-Rodríguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir. 1996). However, if the nonmoving party rests solely upon "conclusory allegations, improbable inferences, and unsupported speculation," summary judgment may be appropriate even where "elusive concepts such as motive and intent" are in dispute. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 13 (1st Cir. 1994) (internal citations and quotation marks omitted).

**Disparate Treatment**

Seifaee acknowledges that he has no direct evidence of age discrimination on AREVA's part. The court will therefore analyze his claims under the three-pronged, burden-shifting formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first prong requires Seifaee to demonstrate a prima facie case of discrimination. The elements of a prima facie case of age discrimination require a showing that 1) Seifaee was a member of a protected class; 2) that Seifaee experienced an adverse employment action; 3) that his job responsibilities were assumed by another person, demonstrating the employer's continuing need for the his skills; and 4) that Seifaee was qualified for his position and performing well enough to rule out termination for inadequate job performance. *Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 760 (1st Cir. 1993). In the case of a RIF, however, Seifaee may satisfy the third element by demonstrating that "the

employer did not treat age neutrally or that younger persons were retained in the same position." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993); *see also Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir. 1993).

It is undisputed that Seifaee, at 61, was a member of a protected class, and that his termination was an adverse employment action.[2]   As to the fourth element, AREVA also acknowledges that Seifaee was at least an adequate, if not a spectacular performer, and qualified to perform the essential functions of his job.   Finally, Seifaee's evidence that younger employees were retained in similar positions is undisputed.

The prima facie case for discrimination having been satisfied, the burden shifts to AREVA to produce a legitimate non-discriminatory reason for Seifaee's termination.  *McDonnell Douglas*, 411 U.S. at 802-803.  The burden is one of production rather than persuasion: AREVA's reason or reasons need not be well-reasoned or even rational, they need only be nondiscriminatory.   AREVA ascribes Seifaee's termination to the losses

---

[2] Seifaee also alleges that the reduction in the number of his billable hours should be counted as an adverse employment action, and that he was "forced to take vacation" while younger employees received billable work. This claim, however, is difficult to square with his acknowledgement that all of the employees in his unit felt the impact of AREVA's financial setback, and with the fact that Seifaee scheduled his three-week vacation prior to AREVA adopting the new vacation policy.

suffered by its parent company, AREVA SA, which in turn led to work shortages and a series of RIFs, including the 2013 RIF of which Seifaee was a casualty.  According to AREVA, the loss of work acutely impacted Seifaee's group causing it to shift focus from thermal hydraulics (Seifaee's area of expertise) to seismic-related work (in which Seifaee had little experience).

AREVA's nondiscriminatory explanation of the RIF shifts the burden back to Seifaee to demonstrate that AREVA's proffered reasons are merely a pretext for age discrimination.  *Id.* at 804.  Seifaee in this regard relies principally on the opinion of his statistical expert, Dr. Craig Moore, that the data provided "clearly supports a claim of age bias."  Pl. Ex. F at 9.  Seifaee notes that all fourteen of the employees terminated as part of the RIF were over the age of 55, and that twelve of the fourteen were over the age of 60. "Valid statistical evidence may play a helpful role even in disparate treatment cases . . . if it tends to prove the discriminatory intent of the decision makers involved." *Hillstrom v. Best W. TLC Hotel*, 354 F.3d 27, 32 (1st Cir. 2003).[3]

In addition to the statistical evidence, Seifaee contends that his reviews do not support his placement near the bottom of the RIF rankings, and points to Sawyer and Rutherford's relatively favorable assessments of his

---

[3] AREVA submits the affidavit of its own expert, Christopher Erath, to rebut Moore's conclusions.

work.  He also identifies two similarly situated younger employees in his group, who were retained by AREVA despite having been the subject of multiple performance complaints (Nissia Sabri)[4] or who had fewer unique skills and less experience (Amanda Finkes).  *See Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 32 (1st Cir. 1999).

Seifaee finally criticizes Boman's RIF evaluation as arbitrary and inconsistent with AREVA's purported RIF-ranking criteria.  Boman, for example, considered only Seifaee's most recent PDA instead of the two called for by the protocol.  Boman also failed to consult Sawyer, Seifaee's direct supervisor, as the criteria required, and listed incorrect information regarding Seifaee's nonexistent "PWR experience (Diablo Canyon)" on the RIF form.

AREVA, of course, offers a number of nondiscriminatory explanations for Seifaee's termination: that his performance, although adequate, did not measure up to the  others in his group; that his skills did not match the company's foreseeable business needs; that its RIF-ranking method was based on objective criteria, and so on.  At the end of the day, however, the

---

[4] The evidence regarding Sabri is not altogether consistent. Supervisors on the one hand cited Nissia Sabri, as a "rock star," and an "excellent young engineer," while also noting complaints about her performance in 2013.

mere fact alone that a supposedly objective process could look across a company at 136 employees and happen by chance to select an entire cohort of persons aged 55 or older for termination, while possible, seems statistically improbable (as Seifaee's expert contends) and that alone might justify a verdict in Seifaee's favor. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) (a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" for termination as conclusive evidence of pretext). The credibility of Seifaee's statistical evidence is a question for the jury.

## Disparate Impact

Counts II and VI of Seifaee's Amended Complaint allege age discrimination under state and federal law based upon a theory of disparate impact. "'[D]isparate impact' [claims] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993), quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-336 n.15 (1977) (internal quotation marks omitted). A disparate impact claim by definition

does not require proof of a discriminatory motive. *Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008).

An employer may rebut a prima facie case of disparate impact under Title VII by showing that its use of a challenged practice is job related and consistent with business necessity. *Jones v. City of Boston*, 752 F.3d 38, 53 (1st Cir. 2014). This is not the route that AREVA has chosen to follow. Rather, it relies on the argument that age-related disparate impact claims are not actionable under Massachusetts Chapter 151B. In support, it cites a First Circuit decision, *Mullin v. Raytheon Co.*, 164 F.3d 696, 705-706 (1st Cir. 1999), which rejected a plaintiff's claims under federal and state law for age discrimination based on a disparate-impact theory.

In *Mullin*, the First Circuit offered the prediction that "the SJC likely will look to [its and other] federal courts' interpretation of the ADEA and hold that an age discrimination claim cannot be grounded solely on a theory of disparate impact." *Id.* at 706. It turned out that the First Circuit was wrong in its fundamental premise. In *Smith v. City of Jackson*, 544 U.S. 228, 243 (2005), the Supreme Court overruled *Mullin* and like cases holding that claims based on a disparate-impact theory *are* available under the ADEA. As the Massachusetts Appeals Court has since followed *Smith's* lead, *see Porio v. Dep't of Revenue*, 80 Mass. App. Ct. 57, 69-70 (2011) (reversing the trial

court's dismissal of age-related disparate-impact claim), I have no reason to believe that the SJC would do differently.

Seifaee relies upon the same evidence for his disparate-impact claims as he does for his disparate-treatment claims. The proffered statistical evidence upon which Seifaee relies is even more probative in a disparate impact than in a disparate-treatment context. *See LeBlanc*, 6 F.3d at 848. There is, therefore, a case for the jury on this claim.[5]

**Unlawful Interference (Counts III, IV, VII and VIII)**

AREVA acknowledges in its motion for summary judgment that Seifaee's unlawful interference claims are "derivative of [his] discrimination claims." Def. Mem. at 29. AREVA maintains that since Seifaee has failed to establish either disparate treatment or disparate impact, his unlawful-interference claims should therefore be dismissed as well. Since the court

---

[5] AREVA's affirmative defense to the federal and state disparate-impact claims – that it applied reasonable factors other than age (RFOA) in conducting the RIF – may be plausible, but almost by definition, plausibility is a matter for the jury to decide. *See* Disparate Impact and Reasonable Factors Other Than Age Under the Age Discrimination in Employment Act, 77 Fed. Reg. 19080, 19082 n.16 (March 30, 2012) (codified at 29 CFR pt. 1625) ("The determination of whether an employer establishes a 'reasonable factors other than age' defense is a jury question."). The same logic applies in AREVA's favor when considering Seifaee's motion for partial summary judgment. Where both parties have submitted evidence which could plausibly support a jury verdict, summary judgment is not appropriate for either party.

finds genuine issues of material fact with regard to Seifaee's discrimination claims, however, AREVA's argument that the unlawful interference claims should also be dismissed is similarly unavailing.

CONCLUSION

For the foregoing reasons, AREVA's motion for summary judgment on all counts is DENIED, and Seifaee's motion for partial summary judgment on Counts II and VI of his complaint is also DENIED.  The clerk shall set a date for a jury trial.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE